UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE EDWARD MYERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:11 CV 65 RWS/DDN |
| ) | |
| JEFF NORMAN, ) | |
| ) | |
| Respondent. ) | |

**ORDER AND RECOMMENDATION**

This action is before the court upon the petition of Missouri state prisoner George Edward Myers for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and the motion of petitioner to supplement the pleadings (Doc. 19). The matter was referred to the undersigned United States Magistrate Judge for a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, the undersigned recommends that the petition for a writ of habeas corpus be denied.

**I. BACKGROUND**

On October 20, 2006, following a jury trial, the Circuit Court of Perry County found petitioner guilty of murder in the second degree and of distribution or delivery of a controlled substance. (Doc. 11, Ex. 2 at 85-86.) On March 26, 2006, the trial court issued concurrent sentences of life imprisonment for second degree murder and life imprisonment without parole for distribution or delivery of a controlled substance as a prior and persistent offender. (Id. at 105-06.) On January 15, 2008, the Missouri Court of Appeals affirmed the judgment on direct appeal. (Id., Ex. E); State v. Myers, 248 S.W.3d 19 (Mo. Ct. App. 2008).

On May 2, 2008, petitioner filed a pro se motion for post-conviction relief in the circuit court under Missouri Supreme Court Rule 29.15. (Doc. 11, Ex. F at 3-13.) On October 20, 2008, petitioner, with the assistance of appointed counsel, filed an amended motion for post-conviction relief. (Id. at 17-50.) The circuit court denied petitioner's motion on February 11,

2009. (Id. at 51-56.) On February 24, 2010, the Missouri Court of Appeals affirmed the circuit court's denial of the motion. (Id., Ex. I.); Myers v. State, 309 S.W.3d 345 (Mo. Ct. App. 2010).

On January 7, 2011, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

In denying petitioner's direct appeal, the Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, as follows:

> On the morning of March 9, 2004, Joseph Gercone bought ten 80 milligram Oxycontin pills from [petitioner]. Oxycontin is a time-released form of oxycodone, which is meant to be ingested as a pill and released slowly into a body. Crushing an Oxycontin pill and ingesting or injecting it thereafter delivers the entire dose of oxycodone at once. Gercone crushed some pills in water in a spoon at [petitioner's] home, and injected himself there. Gercone left and picked up his girlfriend, Megan Williams ("Girlfriend") and a friend, Tanya Baker, and the trio rented a motel room. Gercone and Girlfriend injected crushed Oxycontin in the motel bathroom, and Girlfriend helped Baker inject herself.
>
> Later that same evening, Gercone went back to [petitioner's] house with a former girlfriend, Jaime McGrael. They were joined subsequently by Girlfriend and Baker. After a fight between Girlfriend and McGrael, Gercone drove off with Girlfriend and Baker in the latter's car, eventually parking a few blocks away. Girlfriend and Baker went back to the motel room, while Gercone returned to [petitioner's] home. Gercone purchased several more Oxycontin pills from [petitioner], and called Girlfriend and Baker, who joined him. Gercone injected himself and Baker, and gave an Oxycontin pill to Girlfriend. Girlfriend asked [petitioner] to help her with it. [Petitioner] prepared the pill, crushing it in water in a spoon, loading the liquid in a syringe, and injected Girlfriend. He injected her again a few minutes later. McGrael, who was also present at [petitioner's] home, thought that [petitioner] had injected too much Oxycontin solution into Girlfriend.
>
> Sometime after midnight, Gercone, Girlfriend, and Baker returned to the motel room. Gercone soon passed out, while Girlfriend and Baker stayed up talking. Girlfriend was nodding off, and they turned off the lights and went to sleep sometime between 2:00 a.m. and 3:00 a.m. No one saw Girlfriend use any more drugs at the motel room after leaving [petitioner's] house.
>
> Gercone and Baker woke up at approximately 7:20 a.m., and realized that Girlfriend was dead. Gercone called 911, while Baker disposed of the drug paraphernalia [sic]. The police soon arrived and examined the scene, which had indicia of drug use. The condition of Girlfriend's body indicated that she likely died at around 6:00 a.m. An autopsy revealed puncture wounds consistent with a needle around her elbow, and marks on her upper leg that may have been puncture marks. Girlfriend died of oxycodone intoxication, with blood work

showing that she had between ten to twenty times the therapeutic amount of oxycodone in her system. Girlfriend also had a pulmonary edema, consistent with a death that takes place over a period of hours.

A number of witnesses testified at trial, including Gercone, Baker, McGrael, the pathologist, and experts for both [petitioner] and the State. A number of documents and exhibits were introduced into evidence as well, including three written statements made by Gercone to the police.

The jury returned guilty verdicts on the charges of second degree murder and distribution of a controlled substance. The trial court sentenced [petitioner] as a persistent drug offender to consecutive terms of life imprisonment for second degree murder and life without parole for distribution of a controlled substance.

(Doc. 12, Ex. E at 1-3); State v. Myers, 248 S.W.3d 19, 21-22 (Mo. Ct. App. 2008).

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges five grounds for relief in this habeas action:

(1) The trial court violated petitioner's right to due process and confrontation by admitting the testimony of Joseph Gercone that Megan Williams told him that petitioner's injection caused her pain and that petitioner had difficulty locating a vein.

(2) The trial court violated petitioner's right to due process by sentencing him as a persistent drug offender when petitioner had only one prior felony related to a controlled substance.

(3) The post-conviction relief court violated petitioner's right to due process by denying his claim of actual innocence without an evidentiary hearing that would have shown that Joe Gercone told Thomas Tobias and Leslie Daniely Moore that Joe Gercone injected himself and Megan Williams in the early morning.

(4) His trial counsel rendered constitutionally ineffective assistance by:

(a) Failing to object to the verdict director for felony murder because it omitted the requirement that the death occur "in the perpetration or attempted perpetration" of a felony.

(b) Failing to call Thomas Tobias as a witness at trial who would have testified that Joseph Gercone injected Megan Williams in the early morning.

(c) "Opening the door" and allowing the admission of the testimony of Joseph Gercone that Megan Williams told him that petitioner's injection caused her pain and that petitioner had difficulty locating a vein.

(d) Failing to object to the trial court's consideration of petitioner's refusal to admit to the crime and refusal to assume responsibility.

(5) His appellate counsel rendered constitutionally ineffective assistance by failing to argue that the verdict director for felony murder was erroneous due to the omission of the requirement that the death occur "in the perpetration or attempted perpetration" of a felony.

(Doc. 1 at 28-35.)

## III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitation periods under Missouri law for asserting grounds for relief on direct appeal and in motions for post-conviction relief, no proper procedure for litigating his federal habeas claims now remains available to petitioner. See Mo. Sup. Ct. R. 29.15(b) (post-conviction relief motion must be filed within 90 days after the mandate of the court of appeals affirming the judgment or sentence is filed; or, if no appeal is filed, within 180 days from the date the person is delivered to the Department of Corrections); Mo. Sup. Ct. R. 81.04(a) (10 days to file a notice of appeal after circuit court judgment is final).

Exhaustion, meaning that petitioner now has no remaining procedure for bringing a claim to the state court, does not satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (concluding that petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

Petitioner presented Grounds 1 and 2 to the state trial and appellate court. (Doc. 11, Ex. B at 87-91; Ex. C at 10-13.) Petitioner presented Grounds 3-5 to the state post-conviction motion court and appellate court. (Id., Ex. F at 18-49; Ex. G 15-20.) Therefore, petitioner has exhausted his claims without procedural bar.

## IV. EVIDENTIARY HEARING

Petitioner also requests an evidentiary hearing to address the grounds raised in the petition. (Doc. 1 at 17-19.) 28 U.S.C. § 2254(e)(2) provides that a court shall not hold an evidentiary hearing on a habeas corpus claim unless a petitioner shows that:

> (A) the claim relies on--
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner alleges no claim relying on a new rule of constitutional law or a factual predicate that could not have been previously discovered with due diligence. Accordingly, petitioner's request for an evidentiary hearing should be denied.

## V. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 559 U.S. 43, 47 (2010). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

## VI. DISCUSSION

### A. Ground 1

Petitioner argues that the trial court violated petitioner's rights to due process and confrontation by admitting the testimony of Joseph Gercone that Megan Williams told him that petitioner's injection caused her pain and that petitioner had difficulty locating a vein. The trial court admitted Joseph Gercone's statement, which read:

> After I was done with my dope, I walked into the kitchen to clean my spoon. When I walked back with into George's bedroom I remember Megan complaining about her arm where George had hit her.
>
> She was complaining about George fishing around in her arm and her arm hurting.

(Doc. 11, Ex. A at 341-42; Ex. C at A-1.)

Under AEDPA habeas review, to determine whether a state court committed error by admitting evidence, courts consider whether the state court's decision was an objectively unreasonable application of the Due Process Clause rather than whether the evidence was

properly admitted under state law. Middleton v. Roper, 498 F.3d 812, 820 (8th Cir. 2007). If such error is shown, a petitioner must further show that the asserted error was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987). To meet this burden, a petitioner must show a reasonable probability that the verdict would have been different absent the asserted error. Id.

The state appellate court found that the trial court did not err by admitting the statement because petitioner's counsel injected into the trial the issue of the length and content of Joseph Gercone's statements to the police. (Doc. 11, Ex. E at 9.) Prior to the admission of the statement challenged by petitioner, petitioner's counsel questioned Joseph Gercone regarding two police statements and emphasized the failure to mention that he saw petitioner inject Megan Williams. (Id., Ex. A at 322-38.)

"[W]here the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." State v. East, 976 S.W.2d 507, 511 (Mo. Ct. App. 1998). The court agrees that petitioner's counsel injected an issue that rendered admissible the statement challenged by petitioner and that the trial court did not err. Moreover, as noted by the state appellate court, two other witnesses corroborated the statement. (Doc. 11, Ex. A at 362-63, 418-19.) Therefore, petitioner fails to demonstrate a reasonable probability that the verdict would have been changed even absent the admission of the statement.

Petitioner also alleges that the admission of Joseph Gercone's testimony violated his right to confrontation. The Sixth Amendment to the United States Constitution states that in all "criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has ruled that the Confrontation Clause applies only to testimonial statements and that states are free to adopt their own hearsay rules for non-testimonial hearsay. Crawford v. Washington, 541 U.S. 36, 68 (2004).

> An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a causal remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out of court statement.

Id. "In determining whether a statement implicates the Confrontation Clause, the crucial inquiry is whether the record was 'created . . . for the purposes of establishing or proving some fact at

trial.'" United States v. Brooks, 715 F.3d 1069, 1079 (8th Cir. 2013) (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009)).

The state appellate court found that Megan Williams' statement to Joseph Gercone, then her boyfriend, was not testimonial and thus did not implicate petitioner's right to confrontation. (Doc. 11, Ex. E at 8.) Moreover, petitioner makes no argument regarding the testimonial nature of the statement. Therefore, petitioner fails to demonstrate that the state appellate court erred regarding petitioner's argument regarding the Confrontation Clause.

Ground 1 is without merit.

**B. Ground 2**

Petitioner argues that the trial court violated petitioner's right to due process by sentencing him as a persistent drug offender when petitioner had only one prior felony related to a controlled substance. Petitioner specifically argues that the sale of an imitation controlled substance is not an offense "relating to controlled substances."

Under Missouri law, a persistent drug offender is an individual "who has previously pleaded guilty to or been found guilty of two or more felony offenses of the laws of the state or of the United States, or any other state, territory or district relating to controlled substances." Mo. Rev. Stat. § 195.275.1(2). Prior to petitioner's conviction, his prior felonies included convictions for fraudulently attempting to obtain a controlled substance and the sale of an imitation controlled substance. (Doc. 11, Ex. B at 12-13.) The state appellate court found that the "imitation controlled substances do in fact relate to, refer to, and are connected to controlled substances" and held that the sale of an imitation controlled substance is an offense "relating to controlled substances." (Id., Ex. E at 12.)

Petitioner's argument focuses on a state court's interpretation of state law. However, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010). Because Ground 2 does not raise an issue of clearly established federal law, Ground 2 is not cognizable in this habeas action.

**C. Ground 3**

Petitioner argues that the post-conviction relief court violated his right to due process by denying his claim of actual innocence without an evidentiary hearing that would have shown Joe

Gercone told Thomas Tobias and Leslie Daniely Moore that Joe Gercone injected himself and Megan Williams on the morning of her death.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). Moreover, habeas relief is available only where errors of a constitutional magnitude have occurred. Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994). The Constitution does not guarantee collateral post-conviction review. Pennsylvania v. Finley, 481 U.S. 551, 557 (1987). Further, the Constitution does not guarantee the right to an evidentiary hearing during post-conviction relief proceedings. Smith v. Lockhart, 882 F.2d 331, 334 (8th Cir. 1989).

Petitioner alleges no valid independent constitutional violation occurring in the state criminal proceedings. Accordingly, neither petitioner's claim of actual innocence nor his claim of entitlement to a state evidentiary hearing are cognizable in this action.

**D. Grounds 4-5**

In Grounds 4 and 5, petitioner argues that he received constitutionally ineffective assistance of trial and appellate counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. Under Strickland, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. If there is any reasonable argument that the state court decision is consistent with Strickland, then the state court decision must be left undisturbed. Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012).

Petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel. First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland. at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable. Strickland, 466 U.S. at 690–91. Additionally, decisions following reasonable,

but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. Id.

Second, under Strickland the petitioner must demonstrate actual prejudice by counsel's deficient performance. Id. at 687. To show prejudice, "the likelihood of a different result must be substantial, not just conceivable." Williams, 695 F.3d at 831. The prejudice, therefore, must be an "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

### 1. Verdict director

Petitioner argues that his trial counsel rendered constitutionally ineffective assistance by failing to object to the verdict director for felony murder because it omitted the requirement that the death occur "in the perpetration or attempted perpetration" of a felony. Under Missouri law, an individual commits felony murder if he:

> commits or attempts to commit any felony, and, *in the perpetration or the attempted perpetration of such felony* or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

Mo. Rev. Stat. § 565.021.1(2) (italicized emphasis added). The Count I verdict director read:

INSTRUCTION NO:  6

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the felony of distribution or delivery as submitted in Instruction No. 8, and

Second, that Megan Williams was killed by acute oxycodone intoxication, and

Third, that Megan Williams was killed *as a result of the perpetration of* that distribution or delivery of a controlled substance,

then you will find the defendant guilty under Count II of murder in the second degree.

(Doc. 11, Ex. B at 73) (italicized emphasis added). Instruction No. 8 read:

INSTRUCTION NO:  8

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about March 9, 2004, in the County of St. Francois, State of Missouri, the defendant knowingly delivered Oxycodone, a controlled substance, to Megan Williams, and
>
> Second, the defendant knew that the substance he delivered was a controlled substance,

then you will find the defendant guilty under Count II of delivering a controlled substance.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "delivered" means the actual, constructive, or attempted transfer from one person to another of drug paraphernalia or of a controlled substance, or an imitation controlled substance, whether or not there is an agency relationship, and includes a sale.

A person knew, or acts knowingly, or with knowledge, with respect to his or her conduct or to attendant circumstances when the person is aware of the nature of his or her conduct or that those circumstance4s exist, or with r4espect to a result of a person's conduct when he or she is aware that his or her conduct is practically certain to cause that result.

(Id. at 75.) Trial counsel raised no objection regarding these instructions. (Id., Ex. A at 494-95.)

The state appellate court stated that the trial court used the appropriate Missouri Approved Instruction and that use of the Missouri Approved Instructions is mandatory under state law. (Id., Ex. I at 8-9.) It also noted the lack of Missouri case law questioning the instruction. (Id. at 9.) On this basis, the appellate court concluded that that trial counsel did not perform unreasonably. (Id.)

The language of the verdict director tracks the language of the applicable Missouri Approved Instruction. MAI-CR 3d 313.06. "Whenever there is an MAI-CR instruction or verdict form applicable under the law and Notes On Use, the MAI-CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." Mo. Sup. Ct. R. 28.02. "If an instruction following MAI–CR3d conflicts with the substantive law, any court should decline to follow MAI–CR3d or its Notes on Use." State v. Carson, 941 S.W.2d 518, 520 (Mo. 1997). However, as noted by the state court, petitioner fails to cite any cases finding the

instruction to be erroneous.[1]  Therefore, the state court reasonably applied the Strickland standard to petitioner's argument regarding trial counsel's failure to object to the verdict director.

Petitioner also argues that appellate counsel rendered constitutionally ineffective assistance by failing to argue that the verdict director for felony murder was erroneous due to the omission of the requirement that the death occur "in the perpetration or attempted perpetration" of a felony. The reasoning above applies with equal force to petitioner's argument regarding appellate counsel. Therefore, the state court reasonably applied the federal Strickland standards to petitioner's argument regarding appellate counsel's failure to raise the verdict director issue.

### 2. Failure to call Thomas Tobias

Petitioner argues that trial counsel rendered constitutionally ineffective assistance by failing to call Thomas Tobias as a witness at trial who would have testified that Joseph Gercone injected Megan Williams in the early morning. Petitioner alleges that Thomas Tobias would have testified as follows. He was an inmate with Joseph Gercone at the St. Francois County Jail. Joseph Gercone told him that he felt remorse regarding Megan Williams' death because they injected Oxycontin before showering in their hotel room and retiring to bed. Petitioner argues that such testimony would have shown that her death was the result of drugs injected with Joseph Gercone between midnight and 3:00 a.m. at a motel.

The state appellate court reasoned that the alleged testimony of Thomas Tobias constituted inadmissible hearsay. (Doc. 11, Ex. I at 5-6.) The state court found that petitioner did not satisfy the narrow exception regarding statements against interest in criminal proceedings because he failed to demonstrate reliability. (Id. at 6.) Specifically, the state court found that petitioner did not sufficiently plead the timing and circumstances of the alleged statement, the relationship of Joseph Gercone and Thomas Tobias, or other corroborating evidence. (Id.)

Under Missouri law, "[a] declaration against interest is admissible when (1) the declarant is unavailable as a witness, (2) the declaration, when made, relates to a fact against the apparent pecuniary, proprietary or penal interest of the declarant, (3) the declaration concerns a fact personally cognizable by the declarant, and (4) the declaration is made under circumstances

---

[1] While not conclusive, it takes but a small amount of analysis to conclude that the Missouri statute's "in the perpetration . . . of such felony" is the literary functional equivalent of Instruction No. 6's "as a result of the perpetration of."

which render it improbable that a motive to falsify exists." Nettie's Flower Garden, Inc. v. SIS, Inc., 869 S.W.2d 226, 230 (Mo. Ct. App. 1993). "Generally, in criminal proceedings declarations against penal interests made by an unavailable witness are not admissible as an exception to the hearsay rule." State v. Williams, 958 S.W.2d 87, 90 (Mo. Ct. App. 1997). However, Missouri recognizes a due process exception if a party can "show that the declarant is unavailable as a witness, there is substantial indicia of reliability of the alleged declaration, and the declaration, if true, would exonerate appellant." State v. Robinson, 90 S.W.3d 547, 551 (Mo. Ct. App. 2002). The indicators of reliability include "(1) each confession was 'in a real sense self-incriminatory and unquestionably against interest,' (2) each statement was spontaneously made to a close acquaintance shortly after the murder occurred, and (3) the statements were corroborated by other evidence in the case." Id. at 552 (citing Chambers v. Mississippi, 410 U.S. 284, 300-01).

Petitioner did not allege the timing or any corroborating evidence necessary to show the admissibility of Thomas Tobias' testimony in the brief to the state appellate court. (Doc. 11, Ex. G at 48-55.) Moreover, the declaration against penal interests exception did not apply, because the declarant, Joseph Gercone, testified at trial and thus did not satisfy the requirement that the declarant be unavailable. (Id., Ex. A at 288-344.)

Therefore, the state court did not unreasonably apply federal law to petitioner's argument.

### 3. Opening the door

Petitioner argues that trial counsel rendered constitutionally ineffective assistance of counsel by "opening the door" and allowing the admission of the testimony of Joseph Gercone that Megan Williams told him that petitioner's injection caused her pain and that petitioner had difficulty locating a vein. The state appellate court found that petitioner failed to demonstrate prejudice because the testimony of two witnesses corroborated the challenged testimony and rendered it cumulative. (Doc. 11 Ex. I at 11-12.) As set forth above, the record supports the state court's finding. (Id., Ex. A at 362-63, 418-19.) Accordingly, the court does not find that the state court unreasonably applied federal law by finding that petitioner failed to demonstrate prejudice.

### 4. Sentencing

Petitioner argues that trial counsel rendered ineffective assistance of counsel by failing to object to the sentencing court's consideration of petitioner's refusal to admit to the crime and refusal to assume responsibility. He alleges that the court's consideration equated to enhancing his sentence based on his exercise of a right to a jury trial.

At the sentencing hearing, petitioner testified as follows:

> Your Honor, Megan Williams was a friend of mine, and I'm very sorry she ever died. But as I've said before, I don't feel responsible for it. I did not sell or give her anything. Baker lied on the stand that day. It's in her deposition. It's in her written statements and everything where she said that, "I handed Megan a pill." I never gave her anything. Mr. Gercone is the one who should be sitting here. But I mean, like I said, Megan lived with me for about six months on and off when her mother wouldn't let her back at home. They was on the street when I met them. That's all I have to say is that I miss her too, Your Honor. And I never got the chance to go to her funeral or talk about it. I've been living with it ever since.

(Doc. 11, Ex. A at 568.) At the conclusion of the proceedings, the sentencing court stated:

> [Petitioner] has had a history of drug abuse, and as [the prosecution] points out, that isn't necessarily a problem for the rest of the world. [Petitioner] has had a history of drug sales. It's one thing to abuse drugs. It's another thing to provide them to other people. I can really detect no remorse, genuine remorse on this matter, and Mr. Myers continues to deny responsibility despite all the evidence to the contrary.

(Id. at 570.)

The state appellate court considered that Missouri law permits sentencing courts to consider lack of remorse and failure to assume responsibility and found that the record revealed no indication of an attempt to punish for the exercise of the right to a jury trial. (Doc. 11 Ex. I at 12-13.) Due process prohibits sentencing courts from retaliating due to a defendant's exercise of a constitutional right. See Texas v. McCullough, 475 U.S. 134, 138 (1986); Blackledge v. Perry, 417 U.S. 21, 33 (1974). However, Missouri law permits the consideration of lack of remorse and failure to assume responsibility and has rejected similar arguments regarding such considerations. State v. Collins, 290 S.W.3d 736, 747 (Mo. Ct. App. 2009).

Therefore, the state court reasonably found that petitioner's trial counsel did not render constitutionally deficient performance.

Accordingly, Grounds 4 and 5 are without merit.

## VII. SUPPLEMENTAL PLEADINGS

On March 24, 2014, petitioner moved to supplement his pleadings. (Doc. 19.) The court sustains petitioner's motion but finds that the supplemental pleadings are without merit.

Petitioner argues that Burrage v. United States, 134 S. Ct. 881 (2014), supports his argument that trial and appellate counsel rendered constitutionally ineffective assistance by failing to contest the verdict director for felony murder because it omitted the requirement that the death occur "in the perpetration or attempted perpetration" of a felony. However, in Burrage, the Supreme Court of the United States interpreted a federal statute rather than Missouri's felony murder statute. Id. Specifically, the Supreme Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." Id. at 892. Although the reasoning of Burrage might persuade a Missouri court, the case does not alter Missouri law. Further, Burrage concludes that "results from" generally requires proof of but-for causation – the same standard alleged by petitioner to have been used in the felony murder verdict director. (Doc. 1 at 48.) In sum, the court does not perceive that Burrage, decided approximately six years after petitioner's direct appeal, rendered the state appellate court's Strickland analysis unreasonable.

Petitioner also argues that State v. Taborn, 412 S.W.3d 466 (Mo. Ct. App. 2013), supports his argument that the trial court violated his right to due process by sentencing him as a persistent drug offender when petitioner had only one prior felony related to a controlled substance. Specifically, petitioner argues that the prosecution did not plead and prove his status as a persistent offender as required by Taborn for valid sentence enhancements resulting from such status. However, the prosecution plead persistent offender status and supported the pleading with two prior convictions as required. (Doc. 11, Ex. B at 12-13, 39-40.) Thus, petitioner's argument remains squarely focused on the state law issue of whether the sale of an imitation controlled substance is an offense "relating to controlled substances." As set forth above, because this court ought not reexamine the state courts' determinations of state law, petitioner's argument is not a cognizable federal habeas claim.

## VIII.  CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED t**hat the motion of George Edward Myers to amend the petition (Doc. 19) is sustained.

**IT IS HEREBY RECOMMENDED** that the petition of George Edward Myers for a writ of habeas corpus (Doc. 1) be denied.

The parties are advised that they have 14 days to file written objections to this Order and Recommendation.  The failure to file timely written objections may waive the right to appeal issues of fact.


　　　　　　　/S/   David D. Noce　　　　
UNITED STATES MAGISTRATE JUDGE


Signed on April 14, 2014.